UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PersaudBramante Apartments, L.L.C.,           File No. 23-cv-218 (ECT/DTS)

    Plaintiff,

v.                                                    **OPINION AND ORDER**

Underwriters at Lloyd's of London,
Ironshore Specialty Insurance Company,
Steadfast Insurance Company, and First
Specialty Insurance Corporation, *also known
as* First Specialty Insurance Company,

    Defendants.

---

Edward E. Beckmann, Beckmann Law Firm, LLC, Bloomington, MN, for Plaintiff PersaudBramante Apartments, L.L.C.

Akira Cespedes Perez, Daniel J. Millea, and Mackenzie R. Moy, Zelle LLP, Minneapolis, MN, for Defendants Underwriter's at Lloyd's of London, Ironshore Specialty Insurance Company, and Steadfast Insurance Company.

Aidan M. McCormack and Mark Deckman, DLA Piper LLP (US), New York, NY, and Richard R. Voelbel, Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, MN, for Defendant First Specialty Insurance Corporation, *a/k/a* First Specialty Insurance Company.

---

After a fire damaged an apartment building, the building's owner sought coverage from its insurers. The insurers paid what they determined was the actual cash value of the loss, but not the replacement cost value that the insured sought. The insured brought this lawsuit for the difference. Because one of the insurance policies at issue requires the owner to bring any claims in New York, rather than Minnesota, those claims must be dismissed.

I[1]

Plaintiff PersaudBramante Apartments LLC owns a large apartment building in New Brighton, Minnesota. Am. Compl. [ECF No. 6] ¶ 8. The property is insured by, among others, Defendants Underwriters at Lloyd's of London (Lloyd's), First Specialty Insurance Corporation, Ironshore Specialty Insurance Company, and Steadfast Insurance Company. *Id.* ¶ 10. After a December 2019 fire caused extensive damage to the building, the insurers determined that the replacement cost for the damage was $2,680,607.76, with an actual cash value of $1,734,112.74. *Id.* ¶¶ 9, 12. The insurers paid Plaintiff the actual cash value amount. *Id.* ¶ 12.

In May 2021, Plaintiff sent the insurers proof it had repaired the property, spending more than $2.9 million on those repairs. *Id.* ¶ 17, 21. Plaintiff demanded that the insurers pay the replacement cost, but they refused. *Id.* ¶ 17–18. Plaintiff claims in this lawsuit that this refusal constitutes a breach of contract, and also seeks a declaration that the insurers owe Plaintiff the full replacement cost, minus any payments previously made.

Three of the Defendant insurers—Lloyd's, Ironshore, and Steadfast—answered the Amended Complaint. ECF Nos. 16, 17. The fourth, Defendant First Specialty Insurance Corporation, brought the instant motion to dismiss, contending that a mandatory forum-selection clause in the insurance contract requires dismissal of Plaintiff's claims against it. First Specialty has merged with SwissRe Corporate Solutions Capacity Insurance Corporation (SwissRe) and the company is now known as SwissRe.

---

[1] In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn from the Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

SwissRe seeks a dismissal without prejudice under Rule 12(b)(6), or, alternatively, dismissal on forum non conveniens grounds. Its supporting papers, however, do not address forum non conveniens principles. Rather, SwissRe asserts as an alternative to its Rule 12(b)(6) argument that the lawsuit is untimely under the insurance policy's time-of-suit provision.

II

Federal jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332; *see also* Am. Compl. ¶ 6. Plaintiff is a Minnesota limited-liability company, but despite direction from Magistrate Judge David T. Schultz, *see* ECF No. 4, Plaintiff did not specify in the Amended Complaint the citizenship of each member of the LLC. *See* Am. Compl. ¶ 6 (stating that diversity jurisdiction exists because "Plaintiff is a limited liability company" and Defendants are not Minnesota citizens); *see also OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007) ("An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members."). Without information regarding each LLC member's citizenship, Plaintiff "has not satisfied its burden of alleging diversity jurisdiction." *Am. Seeds, LLC v. Dalchow*, No. 12-cv-2951 JNE/LIB, 2012 WL 5931721, at *2 (D. Minn. Nov. 27, 2012). In the usual case, this would require dismissal without prejudice for lack of subject-matter jurisdiction. *See id.* (ordering the plaintiff to file an amended complaint specifically alleging the citizenship of each party or face dismissal for lack of subject-matter jurisdiction).

This is not the parties' first litigation over the apartment-building fire in this Court, however. *PersaudBramante Apartments, L.L.C. v. Underwriters at Lloyd's of London*, No.

3

22-cv-57 (ECT/ECW) (D. Minn. filed Jan. 10, 2022). The previous lawsuit was removed from Minnesota state court and the notice of removal states that Plaintiff's "manager and sole member" is a citizen of Minnesota. 22-CV-57 ECF No. 1 at 6. At the hearing, both parties represented that this allegation was still true. Because the citizenship allegation is a matter of public record, it is appropriate to rely on it to determine whether complete diversity exists. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).

Lloyd's is a foreign corporation incorporated in England and Wales, with a principal place of business in England. Am. Compl. ¶ 2. In the United States, Lloyd's principal place of business is in New York. *Id.* Moving Defendant First Specialty/SwissRe is incorporated in Missouri and has its principal place of business there. *Id.* ¶ 3. Ironshore is incorporated in Arizona, with its principal place of business in Massachusetts. *Id.* ¶ 4. Steadfast is organized in Delaware and has its principal place of business in Illinois. *Id.* ¶ 5. As noted, Plaintiff's sole member is a Minnesota citizen. The amount in controversy exceeds $75,000—Plaintiff is seeking nearly one million dollars from the insurers. *Id.* ¶¶ 12, 17. Diversity jurisdiction exists in this case.

### III

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on

4

its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A

There is some dispute as to the contents of the policy at issue. SwissRe appended to its moving papers a property insurance policy issued by First Specialty Insurance Corporation to Property Risk Management Association Inc – Tower 2.[2] Koch Decl. Ex. 1 [ECF No. 27-1] at 3 ("SwissRe Policy").[3] The SwissRe Policy reflects that an additional premium was paid to make PersaudBramante Apartments LLC a "Named Insured" under the policy. *Id.* at 130.

Plaintiff attached to its briefing in opposition a "policy binder" that its principal, Terry Persaud, received from his local insurance broker in June 2019. ECF No. 35-2. Plaintiff claims that because this document does not contain the choice-of-law or forum-selection clauses on which SwissRe bases its motion, there is a dispute of fact as to whether these clauses were included in Plaintiff's policy and whether Plaintiff had notice of them, and thus whether they are enforceable.

The policy binder Persaud references is a compendium of different insurance provisions relating to the property. *Id.* The exhibit contains insurance provisions applicable to policies issued by CNA, *id.* at 14–68; Steadfast Insurance Company/Lloyd's,

---

[2]   Neither party explains who Property Risk Management Association, Inc., is or its role in securing insurance for Plaintiff.

[3]   Citations are to ECF pagination, not a document's original pagination.

5

*id.* at 69–93; Zurich North America, *id.* at 94–126; Scottsdale Insurance Company, *id.* at 129–139; The Princeton Excess and Surplus Lines Insurance Company, *id.* at 140–157; RSUI Indemnity Company/Landmark American Insurance Company/Covington Specialty Insurance Company, *id.* at 158–204; Ironshore Specialty Insurance Company, *id.* at 205–37; Homeland Insurance Company of New York/OneBeacon Insurance Group, *id.* at 238–55; Lloyd's, *id.* at 256–68; Hallmark Specialty Insurance Company, *id.* at 269–290; Arch Specialty Insurance Company, *id.* at 291–308; an unidentified company, *id.* at 309–57; Endurance American Specialty Insurance Co., *id.* at 358–78; Evanston Insurance Company/Aspen Specialty Insurance Company, *id.* at 379–94; Allied World Assurance Company, Ltd., *id.* at 395–401; Chubb European Group, *id.* at 402–03; Colony Insurance Company, *id.* at 404–13; and Aspen Specialty Insurance Company, *id.* at 414–21.

No section of this document purports to contain a policy or policy provisions applicable to SwissRe. And the document itself makes clear that it is a summary of changes to each insurer's individual policy that is applicable to Policy Risk Management Association, not a complete policy for each insurer. The broker, a company called AmWINS Brokerage of Georgia, *see id.* at 2, included in the exhibit a summary of the surplus insurance covering the property which lists the "layer" and policy number for each insurer. *Id.* at 8. More importantly, however, none of the insurance documents in this exhibit purport to be a complete insurance policy. Rather, the documents from each insurer are obviously merely exceptions and endorsements to the policies they each issued to Policy Risk Management Association. *E.g.*, *id.* at 238–55 (pollution exclusion; nuclear, chemical, and biological exclusion; fungus, wet rot, dry rot, virus and bacteria exclusion;

6

electronic data and cyber vandalism exclusion; service of suit provisions; and "excess property conditions"). With one exception, each insurer's section of this exhibit is either preceded by or concluded with a "Participating Carrier Summary" listing the "Additional Terms & Conditions" included in the document. *E.g., id.* at 255 (Participating Carrier Summary for Homeland Insurance Company of New York). None of the provisions in this document appear to cover fire damage. Indeed, the policy binder presents conflicting information regarding whether its provisions cover the December 2019 fire in the first instance, as the binder provides on one page that the term of the policy is December 31, 2018, to December 31, 2019, and on another page that the term is March 1, 2018, to March 1, 2019. *Id.* at 5, 422. Assuming the policy binder's provisions were in force at the time of the fire, no reasonable reader would believe the policy binder contained all of the provisions relevant to these insurers' provision of coverage to Plaintiff.

But even if this document could be so read, it does not appear to contain any policy provisions for SwissRe. The only mention of SwissRe/First Specialty is in the summary chart referenced previously. *Id.* at 8. The chart lists the relevant SwissRe Policy number as ESP 2003711 00. *Id.* This is the same number on the policy SwissRe provided with its motion. *See* ECF No. 27-1. There is no legitimate fact dispute as to which policy applies in this matter, and Plaintiff's claim regarding the ostensible absence of the provisions from Plaintiff's policy and whether it had notice of those provisions is without merit.

B

The SwissRe Policy contains both a choice-of-law provision and a mandatory forum-selection clause. The relevant provision reads:

7

**Applicable Law; Court Jurisdiction**

> The laws of the State of New York, without regard to any conflict of laws rules that would cause the application of the laws of any other jurisdiction, shall govern the construction, effect, and interpretation of this insurance agreement.
>
> The parties irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York and to the extent permitted by law the parties expressly waive all rights to challenge or otherwise limit such jurisdiction.

SwissRe Policy at 85.  SwissRe argues that these provisions mandate both the application of New York law to the parties' dispute and the dismissal of this matter without prejudice.  According to Plaintiff, however, the Minnesota standard fire insurance policy statute prohibits both choice-of-law and mandatory forum-selection clauses in insurance contracts that provide for law or fora outside the state of Minnesota.

The Minnesota statute provides that "[n]o policy or contract of fire insurance shall be made, issued or delivered by any insurer . . . on any property in this state, unless it shall provide the specified coverage and conform as to all provisions, stipulations, and conditions, with such form of policy." Minn. Stat. § 65A.01, subd. 1.  The statute sets forth a number of requirements for fire-insurance policies insuring Minnesota property.  But the statute's only reference to a mandatory forum is with regard to an appraisal, not a lawsuit.  The relevant provision states:

> In case the insured and this company . . . shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.  In case either fails to select an appraiser within the time provided, *then a presiding judge of the district court of the county wherein the loss occurs*

8

>  *may appoint such appraiser* for such party upon application of the other party in writing . . . .

Minn. Stat. § 65A.01, subd. 3 (emphasis added).  The statute only requires that a Minnesota state court appoint an appraiser; it does not prohibit forum-selection clauses in fire-insurance policies.

Plaintiff cites no binding legal authority for its position, relying solely on a decision from the Western District of Washington.  *Jorgenson Forge Corp. v. Ill. Union Ins. Co.*, No. 2:13-cv-1458-BJR, 2014 WL 12103362 (W.D. Wash. June 17, 2014).  The *Jorgensen* court invalidated a mandatory forum-selection clause in an insurance contract.  *Id.* at *1–*2.  But the Washington statute on which that court based its ruling provides that "no insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state shall contain any condition, stipulation or agreement . . . depriving the courts of [Washington] of the jurisdiction of action against the insurer."  Wash. Rev. Code § 48.18.200(1)(b).  Minnesota's standard fire-insurance policy contains no such broad jurisdictional language.  *Jorgensen* is not on point.

In addition, Minnesota's statute provides that "[n]o permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto."  Minn. Stat. § 65A.01, subd. 3.  Minnesota law thus allows parties to fire-insurance policies to change the standard policy's provisions if they do so in writing.  The provision exempts the standard appraisal requirements from this broad grant of authority to vary a policy's terms.  *See id.* ("No provision, stipulation or forfeiture shall be held to be waived by any requirements or proceeding on the party of this

9

company relating to appraisal . . . ."). As addressed above, however, the statute's appraisal provisions do not foreclose litigation in a foreign forum, but merely require that a Minnesota court order any appraisal. Plaintiff's insistence that no fire insurance policy covering property in Minnesota can mandate a forum outside Minnesota is unsupported by any authority and contrary to the statute's language. The forum-selection clause is valid.

Minnesota courts regularly enforce mandatory forum-selection clauses like this one.[4] *See Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 547 (8th Cir. 2003) (affirming district court's dismissal for improper venue based on mandatory forum-selection clause). Although mandatory forum-selection clauses are to be enforced in "all but the most exceptional cases," the proper procedure for enforcing such a clause is a motion to transfer under § 1404(a) or a dismissal on forum non conveniens grounds, if the contractual forum is non-federal, not a Rule 12(b)(6) dismissal. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 60–61 (2013).

SwissRe's briefing did not address whether the Policy's forum-selection clause allows for transfer to a federal court in New York or provides only for state-court jurisdiction, which would require dismissal without prejudice of the claims against SwissRe. The clause states that the parties submit to the "exclusive jurisdiction of the Courts of the State of New York." SwissRe Policy at 85. At the hearing, counsel for SwissRe argued that the clause requires venue in New York state courts, pointing to the

---

[4] Plaintiff does not dispute that the provision is a mandatory, not a permissive, forum-selection clause. *Compare MRP Trading I A, LLC v. Eberhart*, 526 F. Supp. 3d 470, 476–481 (D. Minn. 2021) (evaluating under Texas statutory and common law whether contractual forum-selection clause was mandatory or permissive).

clause's use of the phrase "Courts of the State of New York" rather than "Courts in the State of New York." Most courts interpreting forum-selection clauses agree that a clause providing for jurisdiction "of" a certain state or county limits the forum to the state's courts, whereas clauses that require litigation "in" a certain state or county encompass the federal court with jurisdiction over that state or county. *See Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011); *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010); *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926 (10th Cir. 2005); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (per curiam)).

The Eighth Circuit has implicitly criticized the "in" and "of" distinction, however, calling it "too smart by half." *Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Office*, 5 F.4th 895, 898 (8th Cir. 2021). But while *Smart* indicates that the use of "of" may not always refer to a state's courts, the better result in this case is that the clause requires litigation in New York state courts, not federal courts. *See New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 549 (3d Cir. 2011) (noting "the widely-accepted rule that . . . '*in* [a state]' express[es] the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state" whereas "'*of* [a state]' connote[s] sovereignty, limiting jurisdiction . . . to the state courts of the named state") (quoting *FindWhere Holdings, Inc.,* 626 F.3d at 755 (emphasis added)); *Seafarers Pension Plan on behalf of Boeing Co. v. Bradway*, 23 F.4th 714, 721 (7th Cir. 2022) ("Most circuits treat forum-selection clause references to courts 'of' a state as not including federal courts in the state, but references to courts 'in' a state as including both state and federal courts

11

located in the state.")  The Policy's drafters were undoubtedly aware of the weight of authority on this issue.  By providing for jurisdiction in the courts "of the State of New York" rather than "in" New York, they likely intended state, not federal, jurisdiction.

The proper procedure, then, is dismissal on forum non conveniens grounds, not dismissal for failure to state a claim.  *See Atl. Marine*, 571 U.S. at 60.  A dismissal based on forum non conveniens requires evaluation of "both the convenience of the parties and various public-interest considerations," *id.* at 62, such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive," *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6 (1981) (internal quotation marks omitted), and public-interest factors such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law . . . ." *Id.* (internal quotation marks omitted). "The Court must also give some weight to the plaintiffs' choice of forum."  *Atl. Marine*, 571 U.S. at 62 n.6.

"Ordinarily, the district court would weigh the[se] . . . factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Id.* at 62–63 (quoting 28 U.S.C. § 1404(a)).  But when there is a valid forum-selection clause, the plaintiff's chosen forum "merits no weight," the private-interest factors are deemed to "weigh entirely in favor of the preselected forum,"

12

and the original venue's choice-of-law rules do not apply, which "in some circumstances may affect public-interest considerations." *Id.* at 63–65.

*Atlantic Marine* teaches that, even if some of the factors listed above weigh in favor of the plaintiff's chosen forum, a forum-selection clause must be enforced unless there are "exceptional factors" that warrant disregarding it. *Id.* at 62. And the Eighth Circuit has made clear that "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid." *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). "Where . . . the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain." *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)). "[O]nly 'some compelling and countervailing reason' will excuse enforcement of a bargained-for forum selection clause." *Id.* (quoting *Bremen*, 407 U.S. at 12).

"A forum-selection clause may be invalid if (1) the clause is the product of fraud or overreaching; (2) a party would be deprived of its day in court if the clause is enforced; or (3) enforcing the clause would contravene the public policy of the forum in which the suit is brought." *Granite Re, Inc. v. N. Lines Contracting, Inc.*, 478 F. Supp. 3d 772, 783 (D. Minn. 2020). Plaintiff does not contend that SwissRe included the forum-selection fraudulently or overreached in some way. Instead, Plaintiff argues that it did not have the opportunity to bargain for the provisions in the SwissRe Policy, characterizing the Policy as a contract of adhesion.

13

SwissRe submitted documents it sent to Plaintiff's broker[5] that show that the forum-selection clause was part of the Policy from the beginning of the parties' negotiations.[6] Koch Decl. [ECF No. 38] at 15.  The knowledge of Plaintiff's broker is imputed to Plaintiff. *See St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695, 700 (8th Cir. 1992) ("In general, an agent's actual notice or knowledge may be imputed to the agent's principal."). Plaintiff's broker negotiated the terms of the policy and had either actual or implied knowledge of the forum-selection clause.  Plaintiff's argument does not preclude enforcement of the clause.  Moreover, Plaintiff does not argue that it will be deprived of its day in court if this case were dismissed so that it could be re-filed in New York, nor does Plaintiff seriously contend (other than with reference to irrelevant provisions in the fire-insurance statute) that there are policy considerations in Minnesota that would warrant disregarding the parties' chosen forum.

Plaintiff's argument that the Policy is a contract of adhesion is equally meritless. Minnesota views many insurance policies as contracts of adhesion because they are "preprinted forms drafted solely by insurance companies." *Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1045 (8th Cir. 2010).  The Policy, however, is not

---

[5]  Plaintiff contends that the broker that negotiated the policy with SwissRe, AmWINS Brokerage of Georgia, is not Plaintiff's agent.  Plaintiff argues that it only had contact with a local Minnesota broker.  But the policy binder the local broker provided to Plaintiff shows that AmWINS Brokerage of Georgia negotiated the policies on behalf of Property Risk Management Association and all other insureds, including Plaintiff.  ECF 35-2 at 2.

[6]  "When considering a request to transfer venue under § 1404(a)[, a court] is not limited to a determination on the pleadings. A court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 883 (D. Minn. 2015) (quotation omitted).

14

a preprinted form drafted by SwissRe. Rather, it is a so-called "manuscript" policy, which means it is "an insurance policy form that is custom designed for a particular insured." *Insurance Definitions: manuscript form or policy*, https://www.irmi.com/term/insurance-definitions/manuscript-form-or-policy (last visited July 10, 2023); *see also* ECF No. 38 at 54 (e-mail asking for a "manuscript quote" for Plaintiff). The evidence SwissRe submitted shows substantive negotiations between SwissRe and Plaintiff's broker about the Policy's provisions. It is not a contract of adhesion.

In the absence of any argument about fraud, overreaching, or other circumstances that would warrant disregarding the mandatory forum-selection clause, that clause must be enforced and dismissal without prejudice of Plaintiff's claims against SwissRe on the basis of forum non conveniens is appropriate.[7]

**ORDER**

Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.   The Motion to Dismiss [ECF No. 18] is **GRANTED**.

2.   Plaintiff's claims against First Specialty Insurance Corporation, now known as SwissRe, are **DISMISSED without prejudice**.

Dated: July 11, 2023     s/ Eric C. Tostrud
                         Eric C. Tostrud
                         United States District Court

---

[7] Given the conclusion that Plaintiff's claims against SwissRe must be dismissed without prejudice and re-filed in New York, SwissRe's alternative argument regarding the policy's time-of-suit provision is best left for the New York court to resolve.

15